In the Matter of the Claim of ANGEL PEREZ et al., Appellants. GENERAL MOTORS CORPORATION, Respondent; PHILIP ROSS, as Industrial Commissioner, Respondent.

Third Department, October 26, 1978

### APPEARANCES OF COUNSEL

*Lipsitz, Green, Fahringer, Roll, Schuller & James (Richard Lipsitz* of counsel), for appellants.

*John J. Higgins (M. Alice McCann* of counsel), for General Motors Corporation, respondent.

*Louis J. Lefkowitz, Attorney-General (Grace A. Brannigan, Samuel A. Hirshowitz* and *Murray Sylvester* of counsel), for Industrial Commissioner, respondent.

### OPINION OF THE COURT

MIKOLL, J.

The board adopted the following findings of fact: "Claimants worked for a large automobile manufacturer located in Tarrytown, New York. The plant was open and work was available to all employees on January 28, 1977. On January 29, 1977 the public utility, which supplied natural gas to the plant, *informed the employer that it would be unable to supply said* natural gas to the plant for the week commencing January 31, 1977. The employees of the plant, via announcements on local radio and TV stations, were informed that the plant would be closed during this week due to a natural gas shortage. However, on January 30, 1977, the public utility informed the employer that natural gas would be available to the plant on an hour-by-hour basis, during the upcoming week. The employer uses the natural gas to operate the plant ovens located in the plant. It was then decided by the main office of the employer, which was located in another state, that the plant would close during the week commencing January 31, 1977 because of a shortage of parts. The parts shortage was due to the fact that this plant was an assembly plant only and that all material used in assembling the product in question was transported to the plant either by rail, truck or air, from manufacturing plants both within and outside of New York State. Approximately 80 percent of the material used at this plant is received in rail cars. Most of the sources that ship to this plant are located in the Detroit area. All rail cars shipped from the Detroit area must pass through Buffalo. There was a severe snow storm in the Buffalo area on or about January 28, 1977, which prevented rail transportation through that City to any other location. The State of New York declared an energy and fuel supply emergency with respect to the use of natural gas. The State waived the one week waiting period for unemployment insurance claimants in instances where the unemployment is related to the natural gas shortage. There was no natural gas shortage in Westchester County during the period in issue. The State of New York also waived the one week waiting period due to severe snow storms in up-State New York. The following counties were covered by this order; Cattaraugus County, Chautauqua County, Erie County, Genesse County, Jefferson County, Lewis County, Niagara County, Orleans County, and Wyoming County. Westchester County was not one of the counties that was affected by this declaration of the State."

The board concluded that the lack of materials and parts was due to the many snow storms in western New York State, but the snow storms were an indirect cause of the plant's failure to open, not the direct cause and, therefore, the waiting period to collect unemployment could not be waived pursuant to subdivision 9 of section 590 of the Labor Law.

The decision should be reversed. For claimants to be entitled to immediate unemployment benefits, they must establish that their unemployment resulted directly from an event constituting a catastrophe, that the event must have occurred within the State and that the Governor must have declared the catastrophic events to constitute a state of emergency. There is no argument that the latter two conditions have been met. Violent snow storms occurred in western New York and the Governor declared a state of emergency. At issue then is whether a storm occurring at one end of the State which makes delivery of parts which are necessary to the operation of a plant impossible is a direct cause of the unemployment resulting therefrom. The opinion of the board denying benefits is based on a narrow interpretation of the term "direct". The board concluded that the catastrophe must have occurred in the geographical area of the place of employment in order to be a direct cause of unemployment. Since Westchester County, the location of the plant, was not a county in which such a storm occurred, the board concluded that catastrophe was not a direct cause of unemployment. Such an interpretation is not within the spirit and intention of the Labor Law. There is no legal difference between a situation where a storm makes it impossible for a claimant to get to work and a storm that makes it impossible for claimant's work to get to him. Claimants are entitled to the waiver of the waiting period accorded by subdivision 9 of section 590 of the Labor Law.

The decision should be reversed, with costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith.

GREENBLOTT, J. P., KANE and MAIN, JJ., concur; LARKIN, J., dissents and votes to affirm.

Decision reversed, with costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith.